UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY
**The Law Firm of Brian W. Hofmeister, LLC**
Brian W. Hofmeister, Esq.
3131 Princeton Pike
Building 5, Suite 110
Lawrenceville, N.J. 08648
(p)(609)890-1500
(f) (609)890-6961
bwh@hofmeisterfirm.com
Counsel to Whairhouse Limited Liability Company and
Taylor Court Apartments LLC

In Re:

WHAIRHOUSE REAL ESTATE INVESTMENTS, LLC,

Debtor.

Case No. 23-16723 (RG)

Chapter 7

Judge: Rosemary Gambardella, U.S.B.J.

(Jointly Administered)

**BRIEF IN SUPPORT OF THE JOINT DEBTORS'
MOTION TO QUASH THE RULE 2004 SUBPOENAS**

Whairhouse Real Estate Investments, LLC ("WREI") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et. seq.) (the "Code") on August 4, 2023. Taylor Court Apartments, LLC ("TCA") filed a tandem voluntary petition for relief pursuant to Chapter 11 of the Code on August 2, 2023. On August 22, 2023 a group of creditors of a third entity, Whairhouse Limited Liability Company ("WLLC") filed an involuntary bankruptcy against WLLC. On October 14, 2023, the Court entered an order appointing a Chapter 11 trustee to the WREI case for the voluntary debtor. Mark Politan qualified for and accepted the appointment (the "Trustee"). On November 16, 2023, the Court entered an order that the WREI, TCA and WLLC cases would be jointly administered (the "Administration Order").[1] At the time of the filing and on a continuing basis (subject to potential stay), the two groups of creditors of the

---

[1] Collectively, WREI, WLLC and TCA are referred to herein as the "Debtors".

joint Debtors have been engaged in significant state court litigation in the Counties of Passaic and Bergen, State of New Jersey, Law Division.

Following his appointment, the Trustee came into possession of certain documents related to the Debtors. On January 31, 2024, one group of pursing creditors comprised of the following: Trevor Roman, Stanley Acosta, Derik DeAngelo, Derek Maldonado, Luis Hernandez, Chamblin Group Real Estate Venture, AJR Investments LLC, Authentic Properties LLC, and Reispec Developments LLC (collectively, the "First Subpoenaing Creditors") served upon the Trustee, through their collective counsel, copies of a subpoena pursuant to Federal Rule of Bankruptcy Procedure 2004 requesting, in the broad sense, all documentation in the Trustee's possession related or referring to the Debtors (the "2004 Subpoena"). The return date of the 2004 Subpoena was February 12, 2024 (for the First Subpoenaing Creditors). Prior to the issuance of the 2004 Subpoena and utilizing a course of conduct that lead to the filings, certain creditor groups, including the First Subpoenaing Creditors have published and disseminated documentation related to the Debtors and specifically the Debtors' principals online using social media platforms and other online avenues in efforts to expose the Debtors' principals and to harass, embarrass, annoy and abuse the individuals.

The corporate Debtors, whether engaged in the bankruptcy process and the state court actions or not, cannot be personally harmed by the Creditor bodies, but the individual principals can. Following a period of brief negotiation regarding the potential limitation of disclosure and dissemination, the Debtors have brought the within motion to quash pursuant to Rule 45 of the Fed. R. Civ. Pro, made applicable to this proceeding by Fed. R. Bankr. Pro. 9016 to quash the Rule

2004 Subpoena.[2] This court should not permit the Debtors' creditors to use simple pre-litigation discovery from the Trustee as a weapon to exact revenge against the Debtors' principals.

Federal Rule of Bankruptcy Procedure 2004 provides "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R.Bankr. P. 2004(a). See citation to In re Summit Glob. Logistics, No. 08-11566 (DHS), 2008 Bankr. LEXIS 5137, at *7-8 (Bankr. D.N.J. Apr. 9, 2008). Rule 2004 further provides the examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." Id. Rule 2004's scope "has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the discovery of fraudulent conduct." 2435 Plainfield Ave., Inc. v. Twp. of Scotch Plains, (In re 2435 Plainfield Ave., Inc.), 223 B.R. 440, 456 (Bankr. D.N.J. 1998) (citations omitted). Courts, in fact, recognize that Rule 2004 examinations are broad, unfettered and in the nature of fishing expeditions. *See* In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).

It may be noted that:

> [T]he breadth of scope of a [Rule] 2004 examination derives from the particular purpose for which [Rule] 2004 and its predecessor provisions under the Bankruptcy Act were promulgated. That is to allow a Trustee, or others interested in accomplishing the same ends, to discover and investigate how to bring to light possession of assets of the debtor that might be intentionally concealed or overlooked in ignorance or haste.

---

[2] Another group of creditors has also submitted a Rule 2004 Subpoena, but as of the date of this filing, that group of Creditors has agreed to a consent order eliminating the dissemination and disclosure of the discoverable information online and using social media platforms.

Id. (citing In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988) (other citations omitted) (emphasis added)). To that end, "[t]hird parties having knowledge of the debtor's affairs, as well as a debtor itself, are subject to examination." In re Valley Forge Plaza Assoc., 109 B.R. at 674 (citations omitted).

However, the Court should also note that "[w]hile the scope of Rule 2004 examination is very broad, *it is not limitless*. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." In re Mathews, No. 18-mc-80-LPS, 2018 U.S. Dist. LEXIS 178364, at *5-6 (D. Del. Oct. 17, 2018) (emphasis added) citing In re Fearn, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989)). "There are . . . limits to the use of Rule 2004 examinations" and *"[i]t may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry."* See In re Washington Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009) (emphasis added) (internal quotation marks omitted); Matter of Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.").

Federal Rule of Civil Procedure 45, made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 9016, provides in relevant part:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from [*10] where the person resides, is employed or regularly transacts business in person . . .

  (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

  (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(c)(3)(A).

  In considering whether a subpoena imposes an undue burden, courts take into account "'relevance, the need of the party for the documents, the breath of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" In re Mattera, No. 05-39171, 2007 Bankr. LEXIS 5008, at *9 (Bankr. D.N.J. June 13, 2007) citing Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (*quoting* U.S. v. Int'l Bus. Machs. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Other courts weigh the burden imposed on the subpoenaed party against the value of the information to the issuing party. *See* Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005).

  Given the broadness of "a person" referenced in subsection (iv) of Rule 45, it would appear that the Court may also consider whether "a person" could be the individuals associated with the Debtors in this case and extend the concept of undue burden to the abuse and harassment potential that the Trustee's full disclosure of these documents would certainly impose. At least some of the Creditors in this case have taken to social media to judge the individual owners of the Debtors in the court of public opinion, without due process. Further, the Debtors have already highlighted in the case of WLLC in initial opposition to the involuntary bankruptcy, the Creditor bodies have utilized overtly violent communications directed to the principals of the Debtors as a mechanism to submission. (See Whairhouse Limited Liability Company, Docket No. 23-17272(RG), Docket Entry [14] Cross Motion to Dismiss, sub-document #2, Certification of Counsel and Exhibits).

There is a policy distinction to be made that documents in the possession of the Chapter 11 Trustee that directly reference the personal and financial affairs of the individual owners of the Debtors do not have probative value in the bankruptcy cases but prior acts of the Creditors have indicated those documents will absolutely be immediately published online in order to further harass and abuse the individuals. The parties engaged initially in a discussion to attempt to limit broader dissemination of the Trustee's documents, to which the Trustee, and some Creditors were agreeable. However, certain Creditor camps, which were unwilling to limit the dissemination were most certainly intending to publish same on social media, making harassment and abuse of the individual owners all but a forgone conclusion.

While the movants understand the breadth and potential probative value of the documents in the possession of the Trustee, same should not be able to be used as weapons against non-debtor parties in the court of public opinion and should not be able to be used to harass, annoy and abuse these individuals. The Court is imbued with the power to strike a balance between probative value and potential for abuse and should strike that balance here.

RESPECTFULLY SUBMITTED,

/s/ Brian W. Hofmeister

BRIAN W. HOFMEISTER

Counsel to the Debtors.

Dated: February 12, 2023